UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
MICHAEL C. GARRETT,

                        Plaintiff,

      - *against* -

K. ASK-CARLSON, Warden, et al.,

                        Defendants.
------------------------------------------------------------- x

15 Civ. 723 (PAC) (JCF)

**OPINION AND ORDER**

HONORABLE PAUL A. CROTTY, United States District Judge:

*Pro se* plaintiff Michael C. Garrett, presently incarcerated at the Metropolitan Detention Center (MDC) in Brooklyn, alleges federal officers violated his constitutional rights during a disciplinary proceeding at MDC. The matter was referred to Magistrate Judge James C. Francis IV, and defendants moved to dismiss. (Dkt. 15.) On December 7, 2015, Magistrate Judge Francis issued a report and recommendation (R&R) that the Court grant defendants' motion to dismiss as to all defendants except Hearing Officer Banks. (Dkt. 32.) Both Garrett and the government timely objected to the R&R. (Dkt. 34; Dkt. 37.)

**I.    Background**

The Court draws the following facts from Garrett's complaint and its attachments, accepting them as true for the purpose of deciding the motion to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

In April 2014, while incarcerated at MDC, Garrett was asked to provide a urine sample for drug testing. (Dkt. 2 at 4.) Defendant T. Rodriguez, a Special Investigative Services Technician at MDC, refused Garrett's request to use the bathroom before providing his sample, causing Garrett to defecate into a trash can and soil himself. (*Id.*) After Garrett turned over his urine, the unsealed sample was placed on a desk next to several other unsealed samples provided by other inmates. (*Id.*)

1

Rodriguez refused Garrett's request to observe the sealing of his urine sample, which later tested positive for marijuana. (*Id.*; Dkt. 2, Exh. A.) Other inmates, including an inmate named Francisco Brito, witnessed these events. (Dkt. 2 at 4.) Garrett alleges the urine he provided "was not dirty"—that is, containing organic compounds indicating he had recently ingested marijuana—but rather was "accidentally" switched with another inmate's sample. (Dkt. 2, Exh. B.)

Garrett was charged with a violation for use of narcotics, and Discipline Hearing Officer John M. Banks found that Garrett committed the violation. (Dkt. 2 at 4.) To reach that conclusion Officer Banks relied on (1) the incident report prepared by Rodriguez; (2) a chain of custody form related to the urine sample; (3) a urinalysis report confirming the presence of cannabinoids in Garrett's urine; and (4) "[Garrett's] admission." (Dkt. 2, Exh. A.) Officer Banks's report notes that Garrett admitted the charge and did not request any witnesses. (*Id.*) Garrett's complaint alleges that he did in fact request inmate Brito as a witness and that his request was denied without justification. (Dkt. 2 at 4.) As punishment for the offense Garrett received (1) 30 days of disciplinary segregation, suspended; (2) disallowance of 41 days of good-time credit; (3) one-year loss of commissary and visiting privileges; and (4) one year of immediate-family-only visiting thereafter. (*Id.*) Garrett administratively appealed the decision in three separate filings, each of which was rejected as untimely. (Dkt. 2, Exh. C, E, G.)

After his appeals were denied, Garrett filed this complaint alleging that Officer Banks and Rodriguez, along with several other named and unnamed prison officials, violated his Fifth and Eighth Amendment rights. As for relief, the complaint originally sought (1) reinstatement of 41 days of good-time credit; (2) expungement of the "incident report"; (3) reinstatement of his visitation and commissary privileges; and (4) $250,000 in "compensatory and punitive damages." (Dkt. 2 at 7.) Garrett agreed to abandon his right to challenge the loss of good-time credit to prevent his claims from being barred under the doctrine announced in *Heck v. Humphrey*, 512 U.S. 477 (1994). (Dkt. 29.)

On December 7, 2015, Magistrate Judge Francis issued an R&R recommending that the Court grant defendants' motion to dismiss as to all defendants, except Officer Banks. (Dkt. 32.) Both Garrett and the government timely objected to the R&R. (Dkt. 34; Dkt. 37.)

## II. Standard of Review

A district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(c). When a timely objection is made to the magistrate judge's R&R, the Court must review the contested portions *de novo*, but it "may adopt those portions of the [R&R] to which no objections have been made and which are not facially erroneous." *La Torres v. Walker*, 216 F. Supp. 2d 157, 159 (S.D.N.Y. 2000).

## III. Legal Standards

### a. Motion to Dismiss

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, *pro se* complaints are to be liberally construed "to raise the strongest arguments that they suggest." *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). But where the complaint's factual allegations permit the Court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the minimum standard and must be dismissed. *Iqbal*, 556 U.S. at 678.

### b. Constitutional Claims

There is an implied right of action against federal agents who violate the Constitution, permitting both equitable and economic relief. *See, e.g., Correctional Services Corp. v. Malesko*, 534

3

U.S. 61, 74 (2001) (noting that equitable relief "has long been recognized as the proper means for preventing entities from acting unconstitutionally"); *Carlson v. Green*, 446 U.S. 14, 18 (1980) ("[V]ictims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right.").

To state a procedural-due-process claim, a plaintiff must allege (1) the deprivation of a liberty or property interest; and (2) that the deprivation occurred without the level of process due under the circumstances. *See Tellier v. Fields*, 280 F.3d 69, 79–80 (2d Cir. 2000). An inmate's liberty interest is implicated where a disciplinary sanction subjects him to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). For such discipline to be constitutionally imposed, an inmate must be afforded "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974)).

To state an Eighth Amendment claim based on the conditions of confinement, a plaintiff must allege (1) that an official's act or omission caused "a deprivation that is 'objectively, sufficiently serious' that he was denied 'the minimum civilized measure of life's necessities'"; and (2) that the official acted (or failed to act) with a "'sufficiently culpable state of mind' . . . such as deliberate indifference to inmate health or safety." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

IV. **Analysis**

   a. **Fifth Amendment Claims**

Garrett's complaint sets out five instances in which he was allegedly denied due process: (1) Rodriguez's failure to seal Garrett's urine sample in his presence; (2) Rodriguez's false accusation;

(3) Hearing Officer Banks's denial of Garrett's request to call Brito as a witness; (4) Hearing Officer Banks's false representation in his report that Garrett admitted using narcotics; and (5) the denial of his administrative appeals.[1] The Court addresses each in turn.

### 1. Treatment of Garrett's Urine Sample

Garrett claims that he was denied due process when Rodriguez failed to seal his urine sample in his presence. Magistrate Judge Francis recommends that the Court dismiss this claim because the Due Process Clause does not "require[] an inmate be allowed to witness the sealing of a urine sample he provides for purposes of drug testing." (Dkt. 32 at 9.) Garrett objects to that recommendation on the ground that "[t]he chain of custody begins with the sealing of the urine sample, either by the inmate himself or by the correctional officer in the presence of the inmate." (Dkt. 37 at 1.) He reasons that because Rodriguez refused to seal his sample in his presence, the evidence lacked an unbroken chain of custody and thus could not be used as a basis for Officer Banks's findings. (*Id.* at 2.)

Sealing a urine sample in an inmate's presence is one way to establish a chain of custody, but it is not mandated by due process. The requirements of due process are satisfied when "a disciplinary body . . . establish[es] a reasonably reliable chain of custody of the urine sample." *Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 124 (S.D.N.Y. 2002). Here, Officer Banks relied on a chain-of-custody report. (Dkt. 2, Exh. A.) And Garrett has not alleged that the report failed to reliably establish custody.[2] The claim is dismissed.

---

[1] Although Garrett challenges only the deprivation of his visitation and commissary privileges, the government has not argued at any point during this litigation that Garrett has failed to sufficiently allege the deprivation of a liberty interest. *Cf. Sandin*, 515 U.S. at 484. The Court makes no determination here whether deprivation of visitation and commissary privileges amounts to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.*

[2] Indeed, Garrett would have no basis to make such a claim, because he alleges he was denied any opportunity to review the report. *See infra*, Section IV.a.4.

## 2. False Accusation

Garrett claims that Rodriguez falsely accused him of the marijuana violation. Magistrate Judge Francis recommends dismissing this claim, concluding that "[i]n the absence of additional factual detail, [Garrett's] bare assertion that the urine sample 'was switched' and his conclusory claim that Technician Rodriguez 'purposely disregarded the accidental switch' do not plausibly establish that any wrongdoing occurred." (Dkt. 32 at 10–11.) In his objections to the R&R, however, Garrett has provided the factual detail necessary to state his claim. Specifically, he claims that Rodriguez knew which urine sample was Garrett's, but purposefully attributed a different, "dirty" sample to him after he and Rodriguez argued about Rodriguez's treatment of the samples. (Dkt. 37 at 3.) How Garrett will be able to prove these allegations is a separate matter. His claims, however, are not conclusory; they are based on Garrett's interaction with Rodriguez and his observations of Rodriguez's treatment of the urine samples.

Generally, a prisoner "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," so long as he is provided an opportunity to rebut the charges. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Franco v. Kelly*, 854 F.2d 584, 587 (2d Cir. 1988) ("[T]he key inquiry in assessing an allegation that an inmate has been found guilty of false disciplinary charges is whether or not the prison has provided the inmate with the minimum procedural due process protections guaranteed by the Fourteenth Amendment."). But, as noted below, Garrett plausibly alleges he was also denied an opportunity to present a defense and rebut the charges against him. *See infra*, Section IV.a.4. As such, Garrett has plausibly alleged that Rodriguez's false accusation violated his due-process rights. *See Grillo v. Coughlin*, 31 F.3d 53, 56 (1994) (noting that while "a fair hearing, conforming to the due process standards of *Wolff*, would 'cure' a constitutional violation otherwise resulting from a

6

false accusation," evidence that a plaintiff "was not afforded a proper *Wolff* hearing" would render a case unsuitable for disposal on a motion for summary judgment).

### 3. Denial of Garrett's Request to Call Witness

Garrett claims that Officer Banks denied him due process by refusing Garrett's request to call inmate Brito as a witness. Magistrate Judge Francis concluded that Garrett has sufficiently pleaded a due-process claim by alleging that Officer Banks denied his request to call Brito without giving him an explanation. (Dkt. 32 at 11–13.) The government objects to the R&R on three grounds. First, it contends that Officer Banks's denial was justified because any testimony from inmate Brito would have been duplicative and nonprobative. (Dkt. 34 at 9–10.) Second, it argues that an allegation of actual prejudice is necessary to state a procedural-due-process claim, which Garrett cannot do. (*Id.* at 11–13.) And third, the government argues that Officer Banks is shielded by qualified immunity. (*Id.* at 13–15.)

Although an inmate's right to call witnesses during disciplinary hearings is "chief among the due process minima," that right is not unqualified. *Ponte v. Real*, 471 U.S. 491, 495 (1985). Hearing officers are granted discretion to refuse to call witnesses, so long as the decision is "logically related" to "correctional goals," including "the penological need to provide swift discipline in individual cases." *Id.* at 495, 497. Accordingly, "[t]he refusal to call witnesses whose testimony would be redundant is not a violation of any established due process right." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014). The complaint alleges that inmate Brito witnessed Rodriguez refuse to permit Garrett witness the sealing of his urine sample. If called to testify, the Court assumes Brito would have corroborated Garrett's account. But such corroboration would be merely duplicative of Garrett's own testimony, and thus the hearing officer permissibly exercised his discretion to refuse to call the witness.[3]

---

[3] To the extent the duplicative testimony would have bolstered Garrett's credibility, the Court notes that Officer Banks did not make any adverse credibility determination.

Magistrate Judge Francis rejected the government's contention that Brito's testimony would have been duplicative on the basis that "[w]hether Mr. Garrett did in fact request to call a witness and whether Officer Banks provided an explanation for denying that request are questions of fact that the Court cannot properly resolve at this stage of the litigation." (Dkt. 32 at 12 n.6.) That is not the proper inquiry. The Court takes the complaint as true, which means the Court assumes that Garrett did in fact request to call inmate Brito and that Officer Banks denied his request. Second, it is immaterial whether Officer Banks provided an explanation for denying that request *at the hearing* (and it is uncontested that he did not); the question is whether that decision is justifiable, even after the fact. *See Real*, 471 U.S. at 497 ("[P]rison officials may choose to explain their decision [to exclude a witness] at the hearing, or they may choose to explain it 'later.'"). Officer Banks's decision was justifiable because there is no dispute that Brito's testimony would have merely tracked or repeated Garrett's own testimony.

The Court concludes that Garrett's due-process rights were not violated when Officer Banks refused to permit him to call Britto, who would have provided duplicative testimony. *See Holland*, 758 F.3d at 225. As such, the Court need not determine whether Garrett must also plead actual prejudice to state his claim that he was denied the opportunity to call witnesses.

### 4. Opportunity to Present a Defense

Garrett claims that Officer Banks falsely reported that he had admitted the marijuana charge. As noted by Magistrate Judge Francis, Garrett did not describe in his complaint "what happened at [the disciplinary] hearing or specify how Officer Banks violated his due process rights." (Dkt. 32 at 15.) Magistrate Judge Francis concluded that although "due process requires that inmates be given an opportunity to rebut charges against them . . . without a more detailed description of the disciplinary hearing, the allegation that Officer Banks wrongly indicated that the plaintiff admitted to misconduct is insufficient to support the claim that he was denied the opportunity to present a defense." (*Id.* at 17–18.)

Garrett's objection, however, provide the detailed description of the disciplinary hearing that his complaint lacked. According to Garrett, Officer Banks began the disciplinary hearing by "attempt[ing] to persuade [Garret] to admit to the charges," explaining that Garrett could either "admit guilt and receive a lighter sanction" or "not admit guilt and risk . . . a harsher sanction." (Dkt. 37 at 2, 4.) Garrett alleges he maintained his innocence and requested "a staff representative to gather evidence and witnesses for [his] defense." (*Id.* at 4.) Garrett further alleges that in response to his request, Officer Banks falsely indicated in his report that Garrett had admitted guilt, denied his request for a staff representative, and prevented him from reviewing evidence and calling witnesses. (*Id.* at 2, 4.) Specifically, Garrett alleges that he was never permitted to review the chain-of-custody report. (*Id.* at 2.)[4] Far from the bare recitation made in his complaint, the allegations contained in Garrett's objections are sufficient to support his claim that Officer Banks denied him a meaningful opportunity to present a defense. *See Kasiem v. Rivera*, 2011 WL 166929, at *9 (S.D.N.Y. Jan. 18, 2011) (finding inmate stated due process claim by alleging, *inter alia*, hearing officer refused to consider inmate's defense); *Malik v. Tanner*, 697 F. Supp. 1294, 1303 (S.D.N.Y. 1988) ("[T]he hearing process may become meaningless if the inmate can be excluded and no effort is made to secure his version of the incident.").[5] If, as Garrett alleges, Officer Banks falsely indicated in his report that Garrett had admitted guilt when he had not, Garrett was denied any opportunity whatsoever to present a defense and denied a determination of guilt by a "'neutral and detached' hearing body." *Wolff*, 418 U.S. at 559; *see also Luna*, 356 F.3d at 487 (recognizing the right to an

---

[4] In its reply to Garrett's objections, the government argues that Garrett's allegations that he was denied a staff representative and denied the opportunity to review the chain-of-custody report were not raised in his administrative appeals and are thus barred. Dkt. 39 at 4–5. The Court agrees that Garrett is barred from stating independent claims on those bases, but he may make such factual allegations in support of his claim that Officer Banks falsely indicated he confessed.

[5] In support of his allegations that Officer Banks falsely indicated in his report that Garrett had admitted to the violations, Garrett asserts that at all stages of the proceedings he had maintained his innocence, stating that he had "made these same requests [for a staff representative to gather evidences and witnesses] at a prior D.H.O. hearing and U.D.C. hearing for the same incident, so it is unlikely that [he] would all of a sudden just admit guilt and not continue with these requests." (Dkt. 37 at 4.) He asserts that "[t]he records for these hearings, as well as the incident report itself, will show that [Garrett] made these requests prior to the hearing with officer Banks." (*Id.*)

"impartial hearing officer"). The effect of such a violation is the same as if Garrett had been found guilty without any hearing at all.[6]

### 5. Administrative Appeals

The Court has found no case establishing that due process requires the availability of administrative review of prison disciplinary proceedings. *See Johnson v. Goord*, 487 F. Supp. 2d 377, 386 (S.D.N.Y. 1987). Moreover, the Federal Bureau of Prisons (BOP) has stated that it would consider Garrett's appeal on the merits, should he resubmit it for consideration. (Dkt. 17 at ¶ 5.) According to BOP, Garrett has refused to resubmit his appeal and stated that he did not want his appeal considered. (Dkt. 24, Exh. A at ¶¶ 10–12.) So even if Garrett could state a procedural-due-process claim on this ground, the claim is moot.

### b. Eighth Amendment Claim

Magistrate Judge Francis recommends that the Court dismiss Garrett's Eighth Amendment claim on two grounds. First, denying an inmate access to the toilet does not offend the Eighth Amendment absent aggravating factors such as especially prolonged deprivations or serious physical harm. Garrett has made no such allegations. Second, the claim is barred by the Prison Litigation Reform Act (PLRA) because he failed to exhaust his administrative remedies. 42 U.S.C. § 1997e(a); *see Espinal v. Goord*, 558 F.3d 119, 123–24 (2d Cir. 2009). Garrett has not objected to this portion of the R&R, and the Court finds no plain error. The Eighth Amendment claim is dismissed.

---

[6] The Court notes that, although the Second Circuit has required plaintiffs to plead actual prejudice to claim certain due-process violations in the prison context, *see, e.g.*, *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (right to assistance); *Sims v. Artuz*, 103 F. App'x 434, 436 (2d Cir. 2004) (summary order) (right to call witnesses), such a requirement seems inappropriate here, where the government has allegedly acted as to deny Garrett any process whatsoever, *see Wolff*, 418 U.S. at 558 ("The touchstone of due process is protection of the individual against arbitrary action of government."). But in any case, Garrett has sufficiently pleaded prejudice. Had Officer Banks permitted Garrett to contest the chain of custody and present testimony that Rodriguez intentionally misattributed a dirty urine sample to him, the outcome of the hearing could have been different.

### c. Qualified Immunity

Magistrate Judge Francis recommends that the Court dismiss the claims against Warden Ask-Carlson, Regional Director Norwood, Rodriguez, and the unnamed defendants on the grounds that the complaint fails to plausibly plead that the defendant personally violated Garrett's constitutional rights. (Dkt. 32 at 19–22.) Garrett objects only as to defendant Rodriguez. (Dkt. 37 at 1–3.) The government objects to Magistrate Judge Francis's recommendation that Officer Banks is not shielded by qualified immunity. (Dkt. 34 at 18–20.) Finding no clear error as to the other defendants, the Court adopts the R&R's recommendation to dismiss all claims against defendants Warden Ask-Carlson, Regional Director Norwood, and the unnamed defendants.

Federal officials are entitled to qualified immunity if (1) "the complaint fails to plausibly plead that the defendant personally violated the plaintiff's constitutional rights"; or (2) "the right was not clearly established at the time in question." *Turkmen v. Hasty*, 789 F.3d 218, 246 (2d Cir. 2015). As noted above, Garrett has plausibly pleaded that Rodriguez and Officer Banks personally violated his constitutional rights. *See supra*, Sections IV.a.2 and 4. The question is whether those rights were "clearly established . . . rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Court makes three inquiries: (1) "whether [the rights are] defined with reasonable specificity"; (2) "whether the decisional law of the Supreme Court or the appropriate circuit court has clearly established the right[s]"; and (3) "whether in light of preexisting law the unlawfulness of the defendant official[s'] actions is apparent." *Charles W. v. Maul*, 214 F.3d 350, 360 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989)).

Garrett alleges that Rodriguez falsely and wrongly accused him of a marijuana violation by deliberately misattributing a dirty urine sample to him and that Officer Banks denied him a fair and impartial hearing. The law of this Circuit, as announced in *Freeman* and consistently reaffirmed in subsequent cases, clearly establishes that, when coupled with the denial of a fair and impartial

11

hearing, a false accusation of wrongdoing in the prison context violates a prisoner's rights to due process. *See Grillo*, 31 F.3d at 56; *see also Jones v. Coughlin*, 45 F.3d 677, 679 (2d Cir. 1995) (noting that the filing of false misconduct charges "may well be factually distinguishable from *Freeman*"—and thus give rise to a due-process claim—if, for example, an inmate "was unfairly denied the right to call key witnesses in defense of the charges against him"). And it is clear, based on the Second Circuit's decisions in *Freeman*, *Franco*, *Grillo*, and *Jones*, that the unlawfulness of Rodriguez's alleged false accusation was apparent at the time he made it. *See Freeman*, 808 F.2d at 951–53; *Franco*, 854 F.2d at 587; *Grillo*, 31 F.3d at 56; *Jones*, 45 F.3d at 679.

Similarly, the Supreme Court and this Circuit have consistently reaffirmed that prisoners are entitled to the minimum requirements of procedural due process in prison disciplinary hearings. *See Wolff*, 418 U.S. at 557; *Superintendent v. Hill*, 472 U.S. 445, 453–54 (1985); *Luna*, 356 F.3d at 487. These minimum requirements include "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for action taken." *Luna*, 356 F.3d at 487 (citing *Kalwasinski*, 201 F.3d at 108). Garrett alleges that he was denied a fair and impartial hearing officer, as evidenced by Officer Banks's erroneous report that Garrett had admitted the charges. And he alleges that Officer Banks unjustifiably prevented from reviewing and thus contesting the documentary presented against him. The unlawfulness of such conduct was undeniably apparent at the time Officer Banks allegedly committed it. *See Wolff*, 418 U.S. at 557.

The Court concludes that Garrett has plausibly alleged that Officer Banks and Rodriguez personally violated his clearly established constitutional rights. As such, neither defendant is shielded by qualified immunity.

### d. Available Remedies

As noted by Magistrate Judge Francis, the only remedies available to Garrett are equitable relief, in the form of expungement of Officer Banks's incident report and restoration of Garrett's

visitation and commissary privileges, and punitive damages arising out of his mental and emotional injuries. (Dkt. 32 at 22.) Garrett has relinquished his claim seeking restoration of his good-conduct time. (Dkt. 29.) And the PLRA bars compensatory damages for mental or emotional injury absent a showing of physical injury or the commission of a sexual act. 42 U.S.C. § 1997e(e).

### e. Leave to Amend

The Court construes Garrett's objections as an amended complaint. He may seek to amend his pleadings further, but only with the leave of Magistrate Judge Francis.

### V. Conclusion

Defendants' motion to dismiss is GRANTED IN PART, as to defendants Warden Ask-Carlson, Regional Director Norwood, and the unnamed defendants, and DENIED IN PART, as to defendants Officer Banks and Rodriguez. The Clerk is directed to terminate the motion at Docket No. 15. Referral to Magistrate Judge Francis is continued for further proceedings.

Dated: New York, New York
February 3, 2016

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge

Copy mailed by chambers to:

Michael C. Garrett
#58716-053
Metropolitan Detention Center
80 Twenty-Ninth Street
Brooklyn, N.Y. 11232